```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 09-21335-Civ-GOLD
                         MAGISTRATE JUDGE P.A. WHITE
```

JORGE MORALES,                       :

    Petitioner,                  :

v.                                   :        REPORT RE DISMISSAL
                                                  §2254 PETITION
WALTER A. McNEIL,                    :          AS TIME BARRED

    Respondent.                  :
_____

    Jorge Morales, a state prisoner currently confined at Okaloosa Correctional Institution at Miami, Florida, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking his conviction for second degree murder entered pursuant to a guilty plea in the Circuit Court of the Eleventh Judicial Circuit, at Miami-Dade County, Florida, Case No. 94-32537.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of the petition with supporting documentary exhibit and affidavit (DE#1), the Court has the respondent's response to an order to show cause with multiple exhibits (DE#s9-10).

    Procedurally, the petitioner was initially charged with the first degree murder of Rolando Jesus Garcia. (DE#10:Ex.A). In 1996, he pled guilty to a reduced charge of second degree murder.

(DE#10:Ex.C). On May 16, 2006, he was adjudicated guilty and sentenced to a term of 30 years in prison. (DE#10:Ex.D). He did not file a direct appeal. (DE#10:Ex.E:2). The judgment of conviction thus became final for federal statute of limitation purposes at the latest on June 17, 1996,[1] when time expired for filing notices of appeal, at the expiration of the thirty-day appeal period from the date the judgment of conviction was entered. Fla.R.App.P. 9.110(b); Demps v. State, 696 So. 2d 1296, 1297, n.1 (Fla. 3 Dist. 1997); Ramos v. State, 658 So.2d 169 (Fla. 3 Dist. 1995); Caracciolo v. State, 564 So.2d 1163 (Fla. 4 Dist. 1990); Gust v. State, 535 So. 2d 642 (Fla. 1 Dist. 1988).

Prior to the expiration of the AEDPA's one-year federal limitations grace-period, the petitioner returned to the state court on January 13, 1997, filing his first Rule 3.850 motion for postconviction relief. (DE#10:Ex.E). The motion was denied by the trial court, and that denial was *per curiam* affirmed by the Third District Court of Appeal without published opinion. Morales v. State, 740 So.2d 547 (Fla. 3 DCA 1997)(table); (DE#10:Ex.J). The mandate issued on May 2, 1997. (Id.).

The federal limitations period next ran unchecked for over three years, from May 2, 1997 until March 14, 2001,[2] when the petitioner returned to the state court filing motions to correct illegal sentence pursuant to Fla.R.Cr.P. 3.800(a). (DE#10:Ex.K). After receipt of a response thereto from the state, the trial court denied the motions on March 23, 2001 and April 20, 2001. (Id.). No

---

[1]Since the last day for filing the notice of appeal fell on a Saturday, June 15, 1996, the petitioner would have had until June 17, 1996, for the filing of his notice of appeal. See Fla.R.App.P. 9.420(e).

[2]The motion was not dated by the petitioner, therefore, the filing date being used is the date of receipt by the Clerk of Court.

2

appeal therefrom appears to have been filed. (DE#10:Ex.K-State Criminal Docket).

Once again, the federal limitations period continued to run unchecked for over three years, from April 20, 2001 until December 30, 2004,[3] when the petitioner, through counsel, filed a second Rule 3.850 motion for postconviction relief. (DE#10:Ex.L). The criminal docket provided by the respondent does not reflect that this motion was ever ruled upon by the court.[4] (DE#10:Ex.K). Regardless, whether this motion remained pending is not dispositive as to the timeliness of this federal petition, as over six years had elapsed during which no postconviction proceedings were pending which would serve to toll the one-year federal limitations period.

The petitioner is not entitled to tolling time for the foregoing motions to correct sentence and Rule 3.850 motions, because they were instituted after the one-year federal limitations period had expired. See 28 U.S.C. §2244(d). See also Tinker v. Moore, 255 F.3d 1331, 1332 (11 Cir. 2001)(holding that a state petition filed after expiration of the federal limitations period cannot toll the period, because there is no period remaining to be tolled); Webster v. Moore, 199 F.3d 1256, 1258-60 (11 Cir.)(holding that even properly filed state court petitions must be pending in order to toll the limitations period), cert. denied, 531 U.S. 991 (2000).

After conclusion of state court proceedings not relevant to the federal limitations here, the petitioner next came to this court, filing this federal habeas petition on May 14, 2009. (DE#1).

---

[3]This is the date the petitioner executed the motion while incarcerated.

[4]Apparently, counsel moved to withdraw in May 2007, and the court granted the motion. (DE#10:Ex.K).

In response to the order to show cause, the respondent argues correctly that this petition should be dismissed as untimely filed. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed for the first time a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. See Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (1996). In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired. 28 U.S.C. §2244(d)(1)(A).[5]

The one-year reasonableness period following the effective date of the AEDPA is subject to the AEDPA's express tolling provision for time spent pursuing state post-conviction relief or other collateral review.[6] 28 U.S.C. §2244(d)(2). See Artuz v. Bennett, 531 U.S. 4 (2000). See also Fields v. Johnson, 159 F.3d 914 (5 Cir. 1998). Moreover, the limitations period is also subject

---

[5]The statute provides that the limitations period shall run from the latest of —

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

[6]A properly-filed application is defined as one whose "delivery and acceptance are in compliance with the applicable laws and rules governing filings," which generally govern such matters as the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. Artuz v. Bennett, 531 U.S. 4 (2000)(overruling Weekley v. Moore, 204 F.3d 1083 (11 Cir. 2000)).

to equitable tolling in "rare and exceptional cases." See Helton v. Secretary for Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), cert. denied, 535 U.S. 1080 (2002); Sandvik v. United States, 177 F.3d 1269, 1271 (11 Cir. 1999). See also Davis v. Johnson, 158 F.3d 806 (5 Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

In the instant case, the petitioner's conviction became final on June 17, 1996, shortly after the enactment of the AEDPA. He thus had one year from that time, or until June 17, 1997, within which to timely file his habeas petition. As will be recalled, he filed his first Rule 3.850 motion which tolled the limitations period. However, as noted previously in this Report, there was over six years during which there were not state court proceeding pending which would toll the limitations period.

However, based upon the petitioner's assertion, before dismissing this petition as time-barred, it must first be determined whether he has demonstrated his actual innocence. (DE#1:14).

It appears that the petitioner is relying on the post-conviction affidavit executed by the victim's spouse, Sosires A. (Susy) Corcho-Cruz, in 2006, some seven years post-trial. Therein, Corcho avers that she was an eyewitness to the shooting which resulted in the death of her husband. (DE#1:Ex.B). According to the witness, the petitioner and her husband were friends, but an altercation ensued between them after her deceased husband accused the petitioner of having an affair with Corcho. (Id.). Corcho

claims her husband was extremely intoxicated, and came at the petitioner with a butcher knife in a threatening manner. (Id.). At that time, a struggle ensued over the knife, but then the petitioner pulled out a gun from his waistband, shooting her husband in the face. (Id.). Corcho believes the shooting was in self-defense. (Id.). She claims to have spoken to petitioner's counsel's about these facts, but cautioned him that there was no way she would get involved or give a statement on the petitioner's behalf. (Id.). Years later, after suffering a heart, Corcho claims she has been fraught with guilt for not coming forward with this information. (Id.).

This affidavit was the subject of state post-conviction proceedings wherein the petitioner unsuccessfully attempted to circumvent the state's limitation period by demonstrating that he was actually innocent based upon the affidavit. As properly found by the state courts, the petitioner has presented no new reliable evidence of innocence whatever. In fact, it is first noted that exculpatory affidavits produced years after the incident, with no reasonable explanation for the long delay, are highly "suspect." Herrera v. Collins, 506 U.S. 390, 423. Besides the obvious "suspect" nature of the now-relied upon affidavit, the affidavit is also substantively unimpressive.

What little doubt, if any, the new affidavit might raise as to the petitioner guilt, it in no way undermines the fact that the petitioner entered into a knowing and voluntary guilty plea. (DE#10:Ex.L-Change of Plea). At his change of plea proceeding, the petitioner acknowledged discussing with counsel any defenses he had, and was cautioned by the court that if he accepted the plea, he would be giving up the right to challenge the state's evidence against him. Even if this Court were to accept as true that the

6

petitioner acted in self-defense, Corcho's affidavit is insufficient to satisfy the threshold showing under Schlup. At best, he has not demonstrated that he is factually innocent, but rather that he would have been able to cast doubt on his intent to murder the victim. However, it is speculative whether the jury would have accepted Corcho's testimony in this regard, especially as evidence regarding Corcho's relationship with the petitioner would have been fully explored and may have even harmed, rather than aided the petitioner.

Specifically, it cannot be overlooked that the petitioner entered into a negotiated plea agreement with the state and based upon that agreement, he changed his earlier entered pleas of not guilty to guilty to the lesser offense of second degree murder. See Transcript of proceeding conducted on May 16, 1996. (DE#10:Ex.L). During the proceeding, the trial court ensured that the petitioner was in fact guilty of the subject offense before accepting the guilty plea. The petitioner denied having any psychological or psychiatric problems, and denied using any medications which would affect his ability to understand the proceedings. (Id.:4). The petitioner further acknowledged that by entering into the plea, he was giving up his constitutional right to a jury trial, and to present and cross-examine witnesses. (Id.:5). He denied being made any other promises, except as announced in open court by the state, that in exchange for the plea, the petitioner would serve a 30-year sentence. (Id.:5). The petitioner also acknowledged that his plea could have adverse immigration consequences as he was not a U.S. citizen. (Id.:7). He denied being threatened or otherwise coerced into changing his plea. (Id.:5). He acknowledged discussing with counsel the nature of the charges, any potential defenses, and indicated he was satisfied with counsel's representation. (Id.:5). The petitioner further understood that he faced a maximum of up to

life in prison based on the reduced charge of second degree murder. (Id.:6).

The state was asked by the court to provide a factual proffer for the guilty plea which revealed that on September 22, 1994, the petitioner was over at the home of the victim, a friend of the petitioner, celebrating the victim's birthday, when an argument over the victim's wife ensued. (Id.:6). The argument escalated, and the victim asked the petitioner to leave. (Id.). After the petitioner left, he called the victim several minutes later, and then returned to the residence, shooting the victim in the head with a firearm, and killing him. (Id.).

Moreover, to the extent that any or all of the affidavit testimony is being offered in support of the petitioner's claim that he is entitled to habeas relief on the basis of newly discovered evidence of his innocence, the petitioner would not be entitled to tolling under §2244(d)(1)(D), because this evidence suggesting his innocence is actually the claim itself, rather than the factual predicate of an independent claim. Because claims of actual innocence based on newly discovered evidence do not state a ground for federal habeas relief absent an independent constitutional violation, the petitioner would not be entitled to tolling under §2244(d)(1)(D). See Hayes v. Warden, New Hampshire State Prison, 2001 WL 716129, *3 (D.N.H. June 6, 2001), citing, Herrera v. Collins, 506 U.S. 390, 400 (1993); White v. Curtis, 2001 WL 279761, *4-5 (E.D.Mich. February 13, 2001).  See also Clay v. Lungren, 1998 WL 283569,*2 (N.D.Cal. May 27, 1998).

In rare instances, the limitation period may run from a date later than the date on which the judgment became final. See 28 U.S.C. §2244(d)(1)(B)-(D). When applying §2244(d)(1)(D), the

operative date for limitations purposes is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." To warrant application of section 2244(d)(1)(D), Petitioner must persuade this Court that he exercised due diligence in his search for the factual predicate of his claim. The Eleventh Circuit has held that an application that "merely alleges that the applicant did not actually know the facts underlying ... his claim" is insufficient to show due diligence. In re Boshears, 110 F.3d 1538, 1540 (11 Cir.1997). The inquiry is "whether a reasonable investigation ... would have uncovered the facts the applicant alleges are 'newly discovered.'" Id. (citation omitted). A petitioner's belated realization of the purported legal significance of the facts does not delay commencement of the limitations period.

Further, review of the record reveals that even if this Court were to find that the petitioner could not have been aware of the factual predicate of the newly discovered evidence claim until at the latest when he had obtained the affidavit of Corcho in 2006, this petition remains time-barred. After giving the petitioner all tolling time for which he would be entitled for the time the pertinent state postconviction proceedings were pending, over one year of untolled time expired. Therefore, this petition remains time-barred.

The petitioner's argument that he should be excused from the application of the statute of limitations based upon the doctrine of equitable tolling is also unavailing. Courts have held that a claim of innocence does not constitute a "rare and exceptional" circumstance to warrant equitable tolling in that many prisoners maintain they are innocent. See Felder v. Johnson, 204 F.3d 168, 171 (5 Cir. 2000). The Eleventh Circuit has held, however, that the

Suspension Clause might require an exception to the statute of limitations where a petitioner can make showing of actual innocence. <u>Wyzykowski v. Department of Corrections</u>, 226 F.3d 1213 (11 Cir. 2000). A habeas petitioner attempting to establish "actual innocence" must meet a high standard. <u>Bousley v. United States</u>, 523 U.S. 614 (1998). In order to demonstrate actual innocence in a collateral proceeding, a petitioner must 1) present new reliable evidence that was not presented at trial and, 2) show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107 (2 Cir. 2000)(citing <u>Schlup v. Delo</u>, 513 U.S. 298, 299, (1995); <u>High v. Head</u>, 209 F.3d 1257 (11 Cir. 2000); <u>Lee v. Kemna</u>, 213 F.3d 1037, 1039(8 Cir.2000); <u>Jones v. United States</u>,153 F.3d 1305 (11 Cir. 1998) (appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him).

To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. <u>Id</u>. at 316. No such showing has been made here. As indicated above and determined by the state courts, the so-called "new evidence" relied on by the petitioner (i.e., the subject affidavits) is not new and is clearly not reliable. The affidavit does not exonerate the petitioner, but at best, offers a defense to a lesser included offense at trial.[7]

---

[7] The success of such a defense is at best speculative in light of the medical examiner's deposition testimony. DE#10:Ex.BB. According to Dr. Sykes, the victim died of a penetrating wound from a bullet that was lodged in his brain. The bullet came through the nose, up through the sinuses, and through the skull

Moreover, to the extent that equitable tolling might otherwise be available for claims of actual innocence, tolling would not be appropriate in circumstances such as those present in this case where the petitioner was not diligent in pursuing his claims. See Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618-19 (3 Cir. 1998)(holding that equitable tolling applies only where prisoner has diligently pursued his claim, but has in some "extraordinary way" been prevented from asserting his rights). See also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984); Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)(holding that principles of equitable tolling do not extend to what is best a garden variety claim of excusable neglect); Fisher v. Johnson, 174 F.3d 710 (5 Cir. 1999)(noting that "equity is not intended for those who sleep on their rights"). For the reasons stated above, the petitioner was not diligent in pursuing his claims, many of which were known to him as early as the prior to his change of plea when the victim's wife advised the petitioner and his counsel surrounding the facts as contained in her affidavit.

The record also does not indicate that the petitioner was in any way impeded by any unconstitutional State action in pursuing state postconviction relief or filing this federal petition for writ of habeas corpus. Finally, the petitioner's status as an

---

into the parietal and occipital lobes. Dr. Sykes estimates the shot was fired at least from a distance of about one and a half feet, because there was no gun powder residue on the victim's body. Additionally, the crime scene technician at no time indicated that she recovered or photographed a large butcher knife near the victim or in the living room where the victim's body was lifted by fire rescue. Finally, at the time the petitioner was interviewed by Detective Borges, he never once mentioned that the victim came toward him carrying a butcher knife. Thus, this evidence makes Corcho's testimony highly suspect.

11

unskilled layperson does not excuse the delay.[8]  The time-bar is ultimately the result of the petitioner's failure to timely prosecute state postconviction proceedings and then this federal habeas corpus petition.

The thrust of this federal petition is the petitioner's assertion that he is actually innocent as he acted in self defense. As noted above, the alleged newly discovered evidence is clearly not "new," and therefore any contention that the statute of limitations did not begin to run until after the petitioner personally discovered the operative facts and/or their legal significance, which he presumably claims is the date he obtained the Corcho affidavit, approximately ten years after the petitioner pled guilty, is meritless.

The petitioner has, therefore, presented no valid justification supported by the record for his failure to timely file his federal habeas corpus petition attacking the instant conviction. The time-bar is ultimately the result of the petitioner's failure to timely institute state postconviction proceedings and then this federal habeas corpus proceeding. Therefore, the claims raised in the petition are time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2) and the petitioner is not

---

[8]It is well settled that ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not excuse prompt filing. See Felder v. Johnson, 204 F.3d 168, 172-73 & n. 10 (5 Cir. 2000) (citing cases); Fisher v. Johnson, 174 F.3d 710, 714 (5 Cir. 1999)(noting that ignorance of AEDPA's limitations period is no excuse for filing an untimely federal habeas petition), cert. denied, 531 U.S. 1164 (2001). See also United States v. Flores, 981 F.2d 231, 236 (5 Cir.1993) (noting that pro se status does not excuse an untimely filed federal habeas petition); Worthen v. Kaiser, 952 F.2d 1266, 1268-68 (10 Cir. 1992)(petitioner's failure to discover the legal significance of the operative facts does not constitute cause); Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5 Cir. 1991)(holding equitable tolling of limitations period within the Age Discrimination in Employment Act was not warranted by plaintiff's unfamiliarity with legal process, his lack of representation, or his ignorance of his legal rights).

entitled to review on the merits.

Further, there is no indication whatever in the record that there exists rare and exceptional circumstances beyond petitioner's control which prevented him from filing the instant petition in a timely manner, entitling him to equitable tolling for any other reason. See Helton v. Secretary for Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), cert. denied, 535 U.S. 1080 (2002); Sandvik v. United States, 177 F.3d 1269, 1271 (11 Cir. 1999). See also Davis v. Johnson, 158 F.3d 806 (5 Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

Since the petitioner has presented no valid justification supported by the record for his failure to timely file his federal habeas corpus petition attacking the instant convictions and sentences, this petition is time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2) and he is not entitled to review on the merits.

It is therefore recommended that this petition for writ of habeas corpus be dismissed as untimely filed pursuant to 28 U.S.C. §2244(d)(1)-(2).

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 14th day of June, 2010.

                                                                              UNITED STATES MAGISTRATE JUDGE

cc:   Jorge Morales, Pro Se
       DC#196014
       Okaloosa Correction Institution
       3189 Little Silver Rd
       Crestview, FL 32539

       Natalia Costea, Ass't Atty. Gen'l
       Office of the Attorney General
       Department of Legal Affairs
       444 Brickell Avenue
       Suite 650
       Miami, FL 33131